## CONSTRUCTION OF A DEVISE AFFECTING TITLE.

Common Pleas Court of Hamilton County.

LOUISE H. POOR ET AL V. EDWARD HART.

Decided, November 25, 1910.

*Title—Question of, Where Property Has Descended by Will—Heirs of the Body of a Life Tenant Construed to Mean Children—Such a Construction Necessary Where All the Words of the Will Can Not Otherwise be Given Effect—Remainder in Children of the Life Tenant and Not in Heirs by Descent to Take in Succession.*

Under a devise "to my said son" of the undivided one-half of certain real estate, "to have and to hold the said property for his life, and the remainder over at his death to the heirs of his body, their heirs and assigns forever share and share alike." the children of the said son of the testatrix are seized with a fee simple title.

*Frank F. Dinsmore,* for plaintiff.
*Cohen & Mack,* contra.

SWING, J.

This cause is submitted to me upon a general demurrer to the answer. Plaintiffs allege in the petition that they are and have been since May, 1910, the owners in fee simple of certain real estate in the petition described; that they have a written contract with defendant to lease said real estate to him for twenty-one years with privilege of purchase at one hundred thousand dollars ($100,000), defendant to pay $10,000 now and a certain rental during the term of the lease, to-wit, $4,500 a year; that they are ready and willing to perform the contract and have tendered the lease, but that defendant refuses to perform on his part, to their injury, and they pray for a decree for specific performance.

Defendant for answer admits that said Louise H. Poor is the owner in fee simple of an undivided half of said real estate, but denies that plaintiffs or any of them are the owners in fee simple of the other undivided half thereof. Defendant sets out in his answer what he alleges is the true title to the property.

I shall not go into a full recital of the allegations. The question as to the title depends upon the meaning of item fourth in the last will of Elizabeth Howell, deceased, which item is as follows, to-wit:

"I give, devise and bequeath to my said son, Chester M. Poor, the undivided one-half (½) of that real estate situated and being, etc. (describing the property), to have and to hold the said property for his life, and the remainder over at his death, to the heirs of his body, their heirs and assigns forever, share and share alike; but in no event can said property be sold or partitioned until his youngest child, George Poor, arrives at the age of twenty-one years (21), and which property I hereby charge with an annuity of fifty dollars ($50) a year for twenty years to be paid to the Central Christian Church of Cincinnati."

As shown by the answer, said Elizabeth Howell, formerly Poor, left an only child surviving her, the said Chester M. Poor, who was also her only living child at the date of the execution of said will. Said plaintiff, Louise H. Poor, was the wife of said Chester M. Poor at the time of the execution of said will and is now his widow, he having died after the death of the testatrix and after the probate of said will. She is the owner in fee simple of an undivided half of the real estate in question, but did not take title under the said will or in any way from said Elizabeth Howell, who never owned that half of the property. The other parties plaintiff are the sons of Chester M. Poor and Louise H. Poor, and all were living at the date of execution of said will, and all unmarried and minors. Several children of said Chester M. Poor and Louise H. Poor died before the execution of said will without issue. Said Edward K., Harry W. and Chester M. Poor, plaintiffs, are now married and have children. Said George T. Poor is of age but unmarried.

It is claimed by defendant that by said item fourth of the will, the said Chester M. Poor took a life estate, simply, "with remainder in fee tail to his four sons, named above, and that upon their death the fee simple title will vest in their issue."

Plaintiffs claim that said Chester M. Poor took a life estate, simply, with remainder to said four sons, intending by the words, "the heirs of his body," the children of said Chester M. Poor,

to-wit, the said four sons.   It is urged on behalf of defendant in argument, that the term "heirs of the body" has a definite legal meaning and that in this case it was used by a lawyer, the writer of the will;   that in other items of the will, items twenty-one, twenty-two and others, he provided estates for life with remainder to "children," so designating them, and that he must be supposed to have used the term, "heirs of the body" in item fourth, designedly and with its legal meaning in mind, so expressing in legal language the intention of the testator.

Plaintiffs by their counsel contend that while the term "heirs of the body" has such legal meaning as is claimed, yet it is not always to be held to have been used in that sense, but is sometimes used in the sense of "children" when used in connection with the words, "share and share alike," or equivalent words, as in item fourth, and especially the added words, "their heirs and assigns forever," as in item fourth, *and with other words indicating* that "children" is meant;   so that if it appears that the term was intended to mean children, it will be so held.   It can not be doubted that the term "heirs of the body" is sometimes used in the sense of children.   Nor can it be doubted that where from the whole will it appears to have been so intended, it will be given that meaning and effect.   In such case as this, as in other cases of construction, the intention of the testator, as shown by the whole will, "taking the will by the four corners," as is sometimes said, must govern notwithstanding the strict legal meaning of some terms which may be employed.

There is great conflict of authority in the United States as to the effect in just such cases as this, of the words, "share and share alike," or words of similar import, upon the term "heirs of the body."   In *Underhill on Law of Wills*, Volume 2, Section 651, there is an interesting discussion of the question, which I shall quote quite fully, because it is important in this case, to-wit:

"Here we must consider the effect of the words *indicating equality of division* in affixing the meaning 'children' to the term 'heirs of the body.'   Thus, for example, suppose there shall be a devise to A for his natural life, remainder to the heirs of his body, *'share and share alike,'* or *'to take equally,'* or *'in equal*

*parts,'* or *'to be equally divided among them,'* or with similar words indicating an intention that the heirs *shall take concurrently and equally.* Under such circumstances we will have to choose between two alternatives. For assuming that the words 'heirs of the body' are used in a technical sense as words of descent, *the direction for an equal division is in most instances absolutely repugnant to them.* If the testator intended that *all* the heirs of the body shall take in succession, as they will by descent, *they can never take equally where they happen to be related in unequal degrees to the ancestor.* The English cases, arguing that the general intent manifest from the whole will shall overrule a particular intent manifested in any portion of it, *have taken the words used in a technical sense, and have rejected as irreconcilably repugnant to them* the words indicating a particular intention *that the heirs of the body shall take concurrently and distributively.* Accoringly, where the devise was to A for his life, and to the heirs of his body as *tenants in common,* or to A and the heirs of his body, *whether sons or daughters, as tenants in common,* or to A for life and to the heirs of his body, 'in such shares, manner or form as A should by will appoint,' the rule in Shelley's case was applied, and A took the estate in fee tail. As respects the influence of a direction that heirs shall take as tenants in common on the rule in Shelley's case, the law is firmly settled in England. The words, 'as tenants in common' are *usually rejected;* and though it has been said that the testator *may, by proper language,* show that by 'the heirs of the body' he means children, yet he must do so in *words which are very clear in their meaning."*

Then follows a statement of a case in which, it is said, "the court in England refused to construe the words, "heirs of the body" as meaning "children," "despite the clear expression of intention."

It is further added:

"In America a direction that heirs, or heirs of the body, who take in remainder, *shall share equally,* has greater weight as evidence of an intention that they shall not take by descent. Where the devise is to heirs, or heirs of the body, 'share and have for the conclusion that his reinstatement is justified by the share alike,' or *to take equally it* will be presumed that the testator did not intend heirs by descent to take in succession, but that he meant by heirs of the body either the *children of the life tenant,* or such persons and no other, who at his death,

were the heirs of his body, and those persons will take the fee as purchasers under his will. This presumption is very materially strengthened where the fee is limited to the *heirs general of the body*."     \*   \*   \*

The author in a note cites a large number of American cases giving effect to the provision for an equal division upon the term "heirs of the body," and a number the other way, and the text-books differ. I will state my opinion, in the light of what has been said, as to the true construction of item fourth of the will in this case, standing alone, and also in view of the language used in certain other items of the will, and in view of all the circumstances that may properly be considered.

Taking item fourth alone, I can not feel warranted in "rejecting" the words "share and share alike," and the provision that "in no event can said property be sold or partitioned until his" (Chester M. Poor's) "youngest child, George Poor, arrives at the age of twenty-one," and construing the item as if those words had not been used. I think they clearly show that the testatrix contemplated that upon George Poor reaching the age of twenty-one years, there might be a sale and partition, a division "share and share alike," an equal division, either when George became twenty-one or after, and in his lifetime. But if the construction of the will urged by defendant is the true construction, viz: that the term "heirs of the body" is meant to create an estate tail with the four sons as the first takers, and "that upon the death of the said four sons the fee simple title will vest in their issue," there could be no sale and partition, division, share and share alike, when George should reach the age of twenty-one, or at any time during George's life after he became of age. There are four sons and all are living, three married and with children; one, George, still unmarried. By the construction claimed by defendant the first donees in tail, the four sons, would take not "a mere life estate," as in case of a tenant for life with remainder to certain others, the remainder already vested, but an estate not to "endure beyond their own life," and the "fee to go to their issue," children or grandchildren, or whoever, living at their death, the issue taking no estate during

the life of the first donees. This is clearly stated by our Supreme Court in *Dungan* v. *Kline et al,* 81 O. S., 371, as the distinction between the estate of a donee in tail and the issue of such donee, and a mere life estate with remainder to certain ones. The syllabus is:

"Under Section 4200, Revised Statutes, the issue of a donee in tail, during the life of such donee, has no estate or interest in the lands entailed which he can alienate."

How then can there be in this case, by any possibility, a sale or partition, division, to the "heirs of the body" of Chester M. Poor, share and share alike, at any time during the life of George Poor, now of age, or during the life of any of the four sons of Chester M. Poor? Who will take at the death of any or all of them can not be known. George may yet marry and leave a child or children. The others may leave more or fewer children than they now have. The construction claimed by the defendant would require me to *reject* the words as to sale or partition, division, not to be had until George becomes of age, and in connection with them, the words "share and share alike," *or to hold that they are meaningless.* In most of the American cases where all the words can not be given effect without holding the words "heirs of the body" to mean "children," they are held to mean children. I know there might be a sale of the property under our statute providing for the sale of entailed estates, but I do not understand that there can be a sale and partition, a division, "share and share alike," or any division, during the life of the first donees in tail or any of them. If it should be urged that the provision as to sale or partition has reference to the sale or partition of the whole property, the two undivided halves, I am not able to see how that can be, for the reason that the testatrix was the owner of only one undivided half, that devised in item fourth, and could not control the action of the owner of the other half as to sale or partition, and can not be supposed to have attempted to control it. I think, therefore, the provision had and could have reference only to a sale or division of the estate devised (an undivided half), by and among those to whom it was devised, the effect of which is the

same as if it had been the whole property instead of an undivided half.

But it is urged that the use of the word "children" in other items, and "heirs of the body" in item fourth, makes it clear that defendant's construction is correct, especially in view of the fact that the will was written by a lawyer. There would be much force in this if the entire language of item fourth would admit of such construction, but I do not think it does. On the other hand it is possible that the writer might have used the word "children" in one or two items of a very long will containing many items, and the words "heirs of the body" in another item, in the same sense, and I think it probable he did; so that the use of the word "children" does not necessarily have the effect claimed for it, even though the different terms are used by a lawyer.

But there is another view of what the lawyer who drew the will may have meant by the language of item fourth, "to Chester M. Poor for his life, and the remainder over at his death to the 'heirs of his body share and share alike,' etc., with the prohibition of sale or partition before George becomes twenty-one. At common law the words used, "to Chester M. Poor for his life, remainder, etc., to the heirs of his body" would have created an estate tail with Chester M. Poor as the first donee. By such provision then, Chester M. would have had an estate to hold during his life, the fee to "the heirs of his body," children or grandchildren, or whoever they might be. I think it *possible* that the writer so intended it. It should be borne in mind also that words pertaining to estates tail have often been inaccurately used by able and learned lawyers.

In *Dungan* v. *Kline et al, supra,* 81 O. S., 371, it was claimed by counsel, upon the strength of the language of the court in *Pollock* v. *Speidel,* 17 O. S., 147, to-wit. "The first donee in tail held a life estate only, as tenant in tail," those being the words of the court, that an estate tail meant "a mere life estate," in the first donee; but the court in *Dungan* v. *Kline* held and clearly showed that such claim was *a misconstruction of an "incorrect" or "inaccurate" expression of the court in Pollock* v. *Speidel.* I mention this as an interesting instance of "incorrect"

or "inaccurate" expressions by eminent lawyers in reference to estates tail, and perhaps as throwing light upon this case. "To Chester M. Poor and the heirs of his body," would under our law create an estate tail, with Chester M. Poor as first donee. At common law, "to Chester M. Poor for his life, remainder to the heirs of his body," would, by application of the rule in Shelley's case, create the same estate. I think that when the writer of the will under consideration in this case, used legal terms, which taken together, would at common law, create an estate tail with Chester M. Poor as first donee in tail, the fee to the heirs of his body, we should not, in trying to give effect to the legal terms, ignore part of them, as to their common law meaning, and give the strict common law meaning to another part, especially in the face of still other words, to-wit: the words as to sale or partition, which if they are given any meaning at all, do not admit of the strict common law meaning of a part only of the legal terms used, the part "heirs of the body," if applied to the four sons as first donees in tail.

I think on the face of it, considering that there were the four sons living, all unmarried, all minors, it is not very likely that the testatrix had in mind to give to Chester M. Poor a mere life estate, with estates tail to the four sons as first donees in tail and the fee to the issue of the four sons, whoever and however many they might be, share and share alike. I think it more likely that she meant, either to give Chester M. Poor a life estate with remainder to his children, as in other items of the will, or else, to create by the legal language used by the lawyer writing the will, what would be an estate tail at common law with Chester M. Poor as first donee in tail, the fee to his issue. Either view comes practically to the same thing in this case, putting the fee in the four sons, then and now living; and either view gives effect to all the provisions of item fourth, as the view contended for by defendant does not. I have not attempted to give any effect to the words, "their heirs and assigns forever," following "the heirs of his body" in item fourth, though Underhill does say in the section quoted above, that the presumption from the provision for equal distribution, "share and share alike," "is very materially strengthened where the fee is limited

*to the heirs general of the heirs of the body,* or to their executor's or assigns."

Our Supreme Court has said in the two cases of *Pollock* v. *Speidel,* 17 O. S., 439, and 27 O. S., 86, that where the fee tail is given and there are super-added words, "and assigns forever," such super-added words do not enlarge the estate into a fee simple. Those were cases involving the construction of a deed, not a will, and that might make a difference. If, as Underhill says, in case of a will, such words do "very materially strengthen the presumption," etc., they would confirm the view I have taken of the meaning of the will regardless of those words.

In accordance with the views and reasoning I have set forth, I hold that by the true construction of item fourth, the four sons of Chester M. Poor, plaintiffs in this case, are seized of the fee simple title. A decree for specific performance may therefore be entered as prayed for in the petition.

NOTE—I think I should say that various other phases of the question in this case might be discussed at length, which I have not discussed, all leading to the same conclusion. A more critical analysis of the words of item fourth might be made, but I am content to let the foregoing views stand without further discussion; except to say that I ought to have referred to the case of Moore v. Lewis et al, 4 Circuit Court Reports, page 284, a decision by the circuit court of this circuit, in which "heirs of the body, share and share alike," is held to mean "children." I think that decision in point, though in the present case there are more provisions indicating children, than in that, especially the words as to sale or partition when youngest child shall come of age. It is said that counsel *conceded* the meaning in that case to be "children;" but it is *held* that in view of the authorities they *should* be held to mean children; that the words "share and share alike," *show* them to mean children. That case was affirmed by the Supreme Court without report and might well be regarded as conclusive of this case, at any rate so far as this court is concerned. There was in that case a dissenting opinion.